FILED

2007 JUN -8 PM 3:38

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

February 2007 Grand Jury

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR No. 07- **07-00513** |
| | ) | |
| Plaintiff, | ) | I N D I C T M E N T |
| | ) | |
| v. | ) | [18 U.S.C. § 1344: Bank Fraud; |
| | ) | 18 U.S.C. § 1957(a): Money |
| SEYED MAHMOOD MOUSAVI, | ) | Laundering; 50 U.S.C. §§ 1701- |
| aka Seyyed Mahmood Mousavi, | ) | 1705: International Emergency |
| aka Seyed Mahmoud Mousavi, | ) | Economic Powers Act; 31 C.F.R. |
| aka Seyed Mahmoud Mousawi, | ) | §§ 560.204, 560.206: Iranian |
| | ) | Transactions Regulations; 18 |
| | ) | U.S.C. § 1425(a): Procurement |
| Defendant. | ) | of Citizenship in Contrary to |
| | ) | Law; 18 U.S.C. § 1001: False |
| | ) | Statement to a Government |
| | ) | Agency] |

The Grand Jury charges:

INTRODUCTION

1.   At all times relevant to this indictment, defendant
SEYED MAHMOOD MOUSAVI, also known as ("aka") Seyyed Mahmoud
Mousavi, aka Seyed Mahmood Mousavi, aka Seyed Mahmoud Mousawi,
("SEYED MOUSAVI") was a United States person, residing in the

Central District of the California and was the president of the
Hejrat Foundation ("HEJRAT"), aka Hejrat Educational Center, a
California corporation and tax exempt entity under Section
501(C)(3) of the Internal Revenue Code.

Hajj Caravan Income

2.    Despite the fact that HEJRAT was a tax exempt, non-
profit organization, defendant MOUSAVI ran a business through
HEJRAT through which he provided a "caravan service" involving
travel and lodging services for "Hajj," a religious pilgrimage to
Mecca.  MOUSAVI earned profits from each traveler who
participated in HEJRAT's Hajj caravan service.

3.    Despite the substantial revenue and substantial profits
MOUSAVI generated through HEJRAT's Hajj caravan service during
the years 2002 through 2004, MOUSAVI claimed on his personal
income tax returns that he had no taxable income during the years
2002 through 2004.  For the same years, MOUSAVI also failed to
report substantial amounts of revenue and profit generated
through HEJRAT's Hajj caravan service on HEJRAT's application for
tax exempt status.

4.    In 2003 and 2004, years in which defendant MOUSAVI
claimed on his personal income tax returns to have no taxable
income, MOUSAVI claimed on several bank loan applications that he
had a personal income of more than $50,000.

The Iran Consulting Contract and Income

5.    Under the International Emergency Economic Powers Act
("IEEPA"), Title 50, United States Code, Sections 1701-1705, the
President of the United States has been granted the authority to
deal with unusual and extraordinary threats to the national

security, foreign policy or economy of the United States, where
such an unusual and extraordinary threat has its source in whole,
or in substantial part, outside the United States.

6.   On May 6, 1995, President Clinton issued Executive
Order 12959, pursuant to IEEPA, prohibiting, *inter alia*, the
export and reexport of certain items of United States origin to
Iran.  On August 19, 1997, President Clinton issued Executive
Order 13059, pursuant to IEEPA, to clarify the provisions of
Executive Order 12959 and to consolidate prior Executive Orders
pertaining to prohibited transactions with Iran.  Under IEEPA, a
trade embargo against Iran has continued to the present.

7.   The United States Department of Treasury, Office of
Foreign Assets Control ("OFAC"), issued the Iranian Transactions
Regulations ("ITR"), Title 31, Code of Federal Regulations, Part
560, which impose restrictions on trade with Iran. Consulting
services provided to Iran and in Iran were subject to the ITR and
could not be supplied to Iran without authorization from OFAC.
Defendant MOUSAVI had not been issued authorization from OFAC to
supply any services to Iran.

8.   In 2002, MOUSAVI entered into a written consulting
agreement with a Kuwaiti company in which he agreed to provide
consulting services in support of the Kuwaiti company's efforts
to bid for a mobile communication licenses in Iran and establish
a bank and leasing company in Iran.  MOUSAVI received
approximately $45,040 in wire transfers from the Kuwaiti company,
but never reported it on his income tax return.  At no time did
MOUSAVI have authorization from the United States Department of
Treasury to engage in otherwise forbidden transactions involving

3

the government of Iran.   MOUSAVI failed to declare this income on his 2002 personal income tax return.

COUNTS ONE through FOUR

[18 U.S.C. § 1344]

The Grand Jury incorporates and realleges the above introductory paragraphs 1 through 8 as though fully set forth herein.

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant SEYED MAHMOOD MOUSAVI, also known as ("aka") Seyyed Mahmoud Mousavi, aka Seyed Mahmood Mousavi, aka Seyed Mahmoud Mousawi, knowingly devised and executed a scheme to use material false and fraudulent pretenses and representations to obtain money and credit owned by and in the custody and control of Washington Mutual Bank, a financial institution then insured by the Federal Deposit Insurance Corporation, by misrepresenting his income levels on loan applications, for the amounts set forth below:

| COUNT | DATE OF MISREPRESENTATION | LOAN AMOUNT |
|-------|---------------------------|-------------|
| ONE   | May 9, 2003               | $82,000     |
| TWO   | December 18, 2003         | $109,000    |
| THREE | June 9, 2004              | $163,600    |
| FOUR  | June 14, 2004             | $50,000     |

COUNTS FIVE through EIGHT

[18 U.S.C. § 1957(a)]

The Grand Jury incorporates and realleges the above introductory paragraphs 1 through 8 as though fully set forth herein.

On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendant SEYED MAHMOOD MOUSAVI, also known as ("aka") Seyyed Mahmoud Mousavi, aka Seyed Mahmood Mousavi, aka Seyed Mahmoud Mousawi, did knowingly and intentionally engage and attempt to engage in the monetary transactions described below, in criminally derived property of a value greater than $10,000 that was derived from a specified unlawful activity, namely, bank fraud in violation of Title 18, United States Code, Section 1344:

| COUNT | DATE | DESCRIPTION | AMOUNT |
|-------|------|-------------|--------|
| FIVE | October 27, 2003 | Transfer from Washington Mutual Bank loan account number 0623622727 to personal account number 4892614607 | $35,000 |
| SIX | February 23, 2004 | Transfer from Washington Mutual Bank loan account number 0623622727 to personal account number 4892614607 | $50,000 |
| SEVEN | September 9, 2004 | Transfer from Washington Mutual Bank loan account number 0623622727 to personal account number 4892614607 | $60,000 |

| EIGHT | October 14, 2004 | Transfer from Washington Mutual Bank loan account number 0623622727 to personal account number 4892614607 | $50,000 |

COUNT NINE

[50 U.S.C. § 1701-1705; 31 C.F.R. §§ 560.206]

The Grand Jury incorporates and realleges the above introductory paragraphs 1 through 8 as though fully set forth herein.

Beginning on a date unknown, and continuing until on or about June 11, 2002, in Los Angeles County, within the Central District of California, defendant MOUSAVI, a United States person, without authorization under the Iranian Transactions Regulations, did engage in, and attempt to engage in, a transaction and dealing in and related to technology and services for sale and supply, directly and indirectly, to Iran and the Government of Iran.

COUNT TEN

[50 U.S.C. § 1701-1705; 31 C.F.R. §§ 560.204]

The Grand Jury incorporates and realleges the above introductory paragraphs 1 through 8 as though fully set forth herein.

Beginning on a date unknown, and continuing until on or about June 11, 2002, in Los Angeles County, within the Central District of California, defendant MOUSAVI, a United States person, without authorization under the Iranian Transactions Regulations, did willfully sell and supply, and attempt to sell and supply, directly and indirectly, technology and services to Iran, where the technology and services were sold and supplied, and attempted to be sold and supplied, to a person in a third country undertaken with knowledge and reason to know that:

(a) Such technology and services were intended specifically for supply, directly and indirectly, to Iran and the Government of Iran; and

(b) Such technology and services were intended specifically for use in the production of, for commingling with, and for incorporation into goods, technology, and services to be directly and indirectly supplied exclusively and predominantly to Iran and the Government of Iran.

9

COUNT ELEVEN

[18 U.S.C. § 1425(a)]

On or about December 8, 1998, in Los Angeles County, within the Central District of California, defendant SEYED MAHMOOD MOUSAVI, also known as ("aka") Seyyed Mahmoud Mousavi, aka Seyed Mahmood Mousavi, aka Seyed Mahmoud Mousawi, knowingly procured and attempted to procure, contrary to law, his naturalization as a United States citizen.  Specifically, on that date, defendant MOUSAVI, during a naturalization interview, swore under penalty of perjury and stated on an Application for Naturalization (Immigration Form N-400) that he had no present or past membership in or affiliation with any organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other place.  In truth, as defendant MOUSAVI then well knew, he was an active and ranking member of the Iranian military during the period of 1978 to 1985.

COUNTS TWELVE and THIRTEEN

[18 U.S.C. § 1001]

The Grand Jury incorporates and realleges the above introductory paragraphs 1 through 8 as though fully set forth herein.

On or about the following dates in Los Angeles County, within the Central District of California, and elsewhere, in a matter within the jurisdiction of the executive branch of the Government of the United States, defendant SEYED MAHMOOD MOUSAVI, also known as ("aka") Seyyed Mahmoud Mousavi, aka Seyed Mahmood Mousavi, aka Seyed Mahmoud Mousawi, knowingly and willfully made the following materially false, fictitious, and fraudulent statements and representations to the Federal Bureau of Investigation ("FBI") and the Immigration and Naturalization Service ("INS"):

| COUNT | DATE | STATEMENT |
|-------|------|-----------|
| TWELVE | December 8, 1998 | On a naturalization application and in an interview with the INS, defendant MOUSAVI denied any past military service, when in fact, as he well knew, he had served in the Iranian military. |

11

THIRTEEN  June 29, 2006

In an interview with the FBI, Defendant MOUSAVI stated he did not serve in the Iranian military in the past when in fact, as he well knew, he had served in the Iranian military.

A TRUE BILL

/S/

Foreperson

GEORGE S. CARDONA
Acting United States Attorney

THOMAS P. O'BRIEN
Assistant United States Attorney
Chief, Criminal Division

MATTHEW D. UMHOFER
Assistant United States Attorney
National Security Section